UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TOBY RHODES,

                    Plaintiff,          Civil Action No.: 19-12550
                                         Honorable Nancy G. Edmund
v.                                   Magistrate Judge Elizabeth A. Stafford

KENSON SIVER, *et al.*,

                    Defendants.

_____/

**REPORT AND RECOMMENDATION TO GRANT IN PART AND DENY IN
PART DEFENDANT OLLIE MAE COLVARD'S MOTION TO DISMISS
[ECF NO. 14], AND TO DISMISS SUA SPONTE SOME CLAIMS
AGAINST DEFENDANTS KENSON SIVER
AND CURTIS ELLIOTT MOSLEY [ECF NO. 14]**

## I.    INTRODUCTION

Plaintiff Toby Rhodes, proceeding *pro se* and *in forma pauperis*, sues

defendants Kenson Siver, Curtis Elliott Mosley, and Ollie Mae Colvard,

under 42 U.S.C. § 1983.  [ECF No. 1; ECF No. 4].  Colvard moves to

dismiss Rhodes's complaint for failure to state a claim or, in the alternative,

for more definite statement.  [ECF No. 14].[1]  The Court recommends that

Colvard's motion be granted in part and denied in part, and that most

_____

[1] The Honorable Nancy G. Edmunds referred the case to the undersigned
for all pretrial matters under 28 U.S.C. § 636(b)(1).  [ECF No. 6].

claims against the Siver and Mosley be dismissed sua sponte.[2]

## II.    BACKGROUND

Rhodes's complaint arises for an incident on election day in November 2017.  Siver was the mayor of Southfield, Michigan, and was on the ballot to keep that position.  [ECF No. 12, PageID.36].  Rhodes's filings suggest that he and Mayor Siver have a history of mutual antipathy, though the origin of their friction is unstated.  [ECF No. 1; ECF No. 17].

Rhodes alleges that when he went to vote in November 2017, Mayor Siver confronted him and blocked him from entering the door of the Kennedy Learning Center, his polling place.  [ECF No. 1, PageID.1-2]. Rhodes says that Mosley then "came out of nowhere" and joined Mayor Siver in aggressively blocking him.  [*Id.*, PageID.3].  The complaint does not explain Mosley's professional or personal relationship with Mayor Siver, if any, but Rhodes says that he and Mosley were strangers to one another. [*Id.*, PageID.4].  Rhodes alleges that, while he tried to get around Mayor Siver and Mosley, Colvard arrived and joined the blockade.  [*Id.*, PageID.6].

Rhodes says that Colvard, who he did not know, demanded to know why he was bothering Mayor Siver.  [*Id.*, PageID.6-7].  He states, "With

---

[2] The Court has issued an order for Rhodes to show cause why his claims against Mosely should not be dismissed because Rhodes has not filed proof that Mosely was served with the complaint.

2

Mosley accusing me, Colvard accosting me, and Siver making veiled threats of bodily harm, it was too much . . . .  I felt they bullied me to keep me from voting against Kenson Siver."  [*Id.*, PageID.7].  Rhodes also alleges that defendants testified against him at a jury trial, causing him to be convicted of disorderly conduct.  [*Id.*, PageID.8].

In the body of his complaint, Rhodes accuses defendants of conspiring to prevent him from voting and to have him jailed on election day.  [*Id.*, PageID.8].  He requests $500,000 in compensatory and punitive damages for defendants' alleged violations of his rights to vote in the election, to free speech, and "to be safe and secure in [his] person and property."  [*Id.*].  Rhodes also alleges that defendants slandered, libeled, and conspired against him.  [*Id.*].  He sues Siver and Mosley in their personal capacity, and sues Colvard in her official and personal capacities.  [*Id.*, PageID.1].  The coversheet of Rhodes's complaint says that his causes of action are violation of his equal protection and due process rights, unlawful imprisonment, and slander and libel.  [*Id.*, PageID.10].

When filing his complaint, Rhodes assumed that Colvard was an election or poll worker.  [*Id.*, PageID.2, 6-7].  But in her motion to dismiss, Colvard says that she is the principal of the Kennedy Learning Center and employed by Southfield Public Schools.  [ECF No. 14, PageID.54, 57].  She

3

says that she investigated the loud voices she heard during Rhodes's argument with Mayor Siver only out of concern for student safety.  [ECF No. 16, PageID.71-72].  In his response, Rhodes does not challenge Colvard's statement that she was a school principal rather than an election or poll worker.  [ECF No. 17].

Mayor Siver denies interfering with Rhodes's right to vote.  He says that Rhodes "was illegally removing signs of Caucasian candidates" and that he called the police because of Rhodes's assaultive behavior.  [ECF No. 12, PageID.35-36].  Rhodes calls the allegations that he was assaultive "ridiculous" and says that Siver "and his flunkies in the prosecutor's office" could not make a case that he illegally removed campaign signs.  [ECF No. 17, PageID.101-102].

## III.   ANALYSIS

### A.

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests a complaint's legal sufficiency.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The *Iqbal* Court explained, "[a] claim has facial plausibility when

the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

In deciding whether a plaintiff has set forth a plausible claim, the Court must construe the complaint in the light most favorable to the plaintiff and accept as true all well-pleaded factual allegations. *Id.* But "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Iqbal*, 556 U.S. at 678, and the Court has no duty to create a claim not spelled out in the pleadings, *Freightliner of Knoxville, Inc. v. DaimlerChrysler Vans, LLC*, 484 F.3d 865, 871 n.4 (6th Cir. 2007). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555-56 (citations and footnote omitted).

Under 28 U.S.C. § 1915(e)(2)(B), a court must sua sponte dismiss an *in forma pauperis* complaint that is frivolous or fails to state a claim. A complaint "is frivolous where it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A complaint fails to state a claim if it lacks "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662,

5

678 (2009) (citation and quotation marks omitted).

Pleadings filed by *pro se* litigants are entitled to a more liberal reading than would be afforded to formal pleadings drafted by lawyers. *Thomas v. Eby*, 481 F.3d 434, 437 (6th Cir. 2007). Even so, complaints filed by *pro se* litigants still must plead a plausible claim for relief. *Davis v. Prison Health Services*, 679 F.3d 433, 437-38 (6th Cir. 2012).

**B.**

Colvard argues that Rhodes does not plead a plausible claim against her. She contends that Rhodes "provides no indication of any law he feels was violated by" her. [ECF No. 14, PageID.54]. And she says that Rhodes's complaint "lacks any language or allegations that would permit Ms. Colvard to have notice of the claim presented against her." [*Id.*, PageID.55]. The Court disagrees with Colvard's claim that Rhodes did not point out the law he feels Colvard violated. He said that defendants violated his rights to vote and to free speech, denied him equal protection and due process, committed libel and slander, conspired against him, illegally imprisoned him and denied him his right "to be safe and secure in [his] person and property." [ECF No. 1, PageID.8, 10]. Rhodes also gives a detailed account of his interactions with defendants on election day in November 2017. [ECF No. 1, PageID.1-8].

6

It is true that Rhodes's complaint does not plausibly allege most of the claims he asserts. Rhodes does not, for example, specify any speech protected by the First Amendment. *Harcz v. Boucher*, 763 F. App'x 536, 542 (6th Cir. 2019) (First Amendment claim of violation of free speech requires that plaintiff have engaged in protected speech). Nor does Rhodes allege that he was treated differently than a similarly situated party, so he does not state an equal protection claim.[3] *Tuscola Wind III, LLC v. Almer Charter Twp.*, 327 F. Supp. 3d 1028, 1044 (E.D. Mich. 2018) (class of one equal protection claim has two elements: "(1) the government treated the plaintiff differently from a similarly situated party and (2) the government had no rational basis for doing so.").

Rhodes also makes nonviable claims related to his disorderly conduct conviction. He claims that defendants illegally imprisoned him and denied him due process. [ECF No. 1, PageID.8, 10]. Rhodes's allegations of slander and libel, and that defendants violated his right to be secure in his person, also appear to relate to defendants' testimony during his criminal

---

[3] In response to the motion to dismiss, Rhodes said that Mayor Siver is racist. [ECF No. 17]. Many of his allegations are outlandish and repugnant. [*Id.*]. And Rhodes made no allegations of racial discrimination in his complaint. [ECF No. 1]. He cannot amend his complaint to add a claim of racial discrimination in his responsive brief. *Jocham v. Tuscola County*, 239 F. Supp. 2d 714, 732 (E.D. Mich. 2003).

prosecution.  [*Id.*].  Under the *Heck* doctrine, a § 1983 suit for damages that would render a conviction invalid requires proof that the conviction has been reversed, expunged or declared invalid.  *Heck v. Humphrey*, 512 U.S. 477, 484 (1994); *Sykes v. Anderson*, 625 F.3d 294, 309 (6th Cir. 2010). Rhodes admits that he was convicted by the jury of disorderly conduct. [ECF No. 1, PageID.8].  The *Heck* doctrine precludes Rhodes from pursuing claims that would render that conviction invalid.

Rhodes's claim that defendants conspired against him is too vague and conclusory.  Conspiracy claims must be pleaded with some specificity; "vague and conclusory allegations that are unsupported by material facts will not be sufficient to state such a claim under § 1983."  *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 563 (6th Cir. 2011) (internal citations and quotations marks omitted).  In *Heyne*, the court found the plaintiff's conspiracy claim to be inadequate because the amended complaint did not include a separate count for conspiracy and lacked "specific allegations of a plan or agreement to violate his constitutional rights."  *Id.*  Here, Rhodes alleges that defendants "conspired to have [him] jailed" and "conspired against [him]."  [ECF No. 1, PageID.8].  He has failed to specify a plan or agreement to violate his constitutional rights.  Besides, his claim that defendants conspired to have him jailed is barred by the *Heck* doctrine.

8

*Heck*, 512 U.S. at 484.

Finally, Rhodes has not identified a constitutionally protected property interest.  *See Smock v. Bd. of Regents of Univ. of Michigan*, 353 F. Supp. 3d 651, 655 (E.D. Mich. 2018).  His claim that defendants violated his right to be secure in his property is not plausible.

Colvard's motion to dismiss those nonviable claims should be granted, and those claims also should be dismissed sua sponte as to Siver and Mosley.  But, accepting Rhodes's claims as true and liberally construing them because of his *pro se* status, the Court finds that Rhodes has stated a claim of voter intimidation under § 11(b) of the Voting Rights Act (VRA), 52 U.S.C. § 10307(b).

## C.

Under Section 11(b), "No person, whether acting under color of law or otherwise, shall intimidate, threaten, or coerce, or attempt to intimidate, threaten, or coerce any person for voting or attempting to vote . . . ." § 10307(b).  This provision of the VRA is intended "to be given an expansive meaning."  *Jackson v. Riddell*, 476 F. Supp. 849, 859 (N.D. Miss. 1979).  By its terms, "Section 11(b) undoubtedly applies to private conduct, and private individuals are subject to its prohibitions."  *Nat'l Coal. on Black Civic Participation v. Wohl*, No. 20 CIV. 8668 (VM), ___ F. Supp.

3d___, 2020 WL 6305325, at *12 (S.D.N.Y. Oct. 28, 2020); *reconsideration denied*, No. 20 CIV. 8668 (VM), 2020 WL 6365336 (S.D.N.Y. Oct. 29, 2020).  And though the VRA has roots in the Fifteenth Amendment, "[a] plaintiff need not show racial animus or discrimination to establish a violation of Section 11(b)."  *Id.* at *13.  These conclusions are supported by the House report on § 11(b).  H.R. Rep. No. 89-439, at 30 (1965), as reprinted in 1965 U.S.C.C.A.N. 2437, 2462.

"To establish a claim under Section 11(b), a plaintiff must show that the defendant has intimidated, threatened, or coerced someone for voting or attempting to vote, or has attempted such intimidation, threat, or coercion."  *Wohl*, 2020 WL 6305325 at *13.  The plaintiff must allege that "that the defendant committed the act with the intent to intimidate or attempt to intimidate."  *Bailey v. Trump*, No. CV 6:20-182-KKC, 2020 WL 6203556, at *3-4 (E.D. Ky. Oct. 22, 2020) (citing *Olagues v. Russoniello*, 770 F.2d 791, 804 (9th Cir. 1985)).

But § 11(b) does not say that a defendant's actions must have been "for the purpose of" interfering with the plaintiff's right to vote.  In contrast, the criminal counterpart to § 11(b) states that the intimidation, threat, or coercion must be "*for the purpose of* interfering with the right of such other person to vote or to vote as he may choose, or of causing such other

10

person to vote for, or not to vote for, any candidate . . . ."  52 U.S.C. §

10101(b) (emphasis added).  Because of that distinction, a court in the

Eastern District of Virginia found that § 11(b) includes no requirement of a

specific intent to interfere with voting rights.  *League of United Latin Am.*

*Citizens - Richmond Region Council 4614 v. Pub. Interest Legal Found.*,

No. 1:18-CV-00423, 2018 WL 3848404, at *3-4 (E.D. Va. Aug. 13, 2018);

*see also Wohl*, 2020 WL 6305325, at *12 (finding that § 11(b)'s prohibitions

are broader than those in § 10101(b)).  "Section 11(b)'s reach is extensive,

in accordance with the VRA's ambitious aims of encouraging true

enforcement of the Fifteenth Amendment's promise of unencumbered

access to the vote, regardless of race."  *Wohl*, 2020 WL 6305325 at *12.

     Rhodes's complaint plausibly alleges that defendants intimidated,

threatened, and coerced him, and that they intended to do those things,

when he tried to vote in November 2017.  [ECF No. 1, PageID.1-8].  He

claims that Mayor Siver "intercepted, confronted, and blocked" him from

entering his polling place.  [*Id.*, PageID.2].  Rhodes asserts that Mayor

Siver used "Mosley as a human obstruction to block [him] from entering the

building to vote."  [*Id.*, PageID.5].  He alleges, "With Mosley accusing me,

Colvard accosting me, Siver making veiled threats of harm," they "blocked

and ganged up on me from entering the building, to vote in the election."

[*Id.*, PageID.7].  Rhodes says that defendants "bullied [him] to keep [him] from voting against Kenson Siver."  [*Id.*].  And he claims to have "abandoned all hope of voting, because of the obstruction of Siver, Mosley, and Colvard."  [*Id.*].  Even though Rhodes did not cite the governing statute, his factual allegations and claims that defendants violated his right to vote are plausible under § 11(b).

Rhodes's claims are also detailed enough to withstand Colvard's motion for a more definite statement under Federal Rule of Civil Procedure 12(e).  That rule states, "A party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response."  Rule 12(e).  Colvard cites *Farah v. Martin*, as supporting her claim that Rhodes's complaint is too vague and ambiguous.  122 F.R.D. 24 (E.D. Mich. 1988).  In *Farah*, the plaintiffs' complaint provided no "details of the time, place, and alleged effect of the conspiracy" they claimed.  *Id.* at 27.  In contrast, Rhodes's complaint alleges that the violations alleged happened on November 7, 2017 at the Kennedy Learning Center, and describes defendants as blocking his effort to vote.  *Farah* is easily distinguishable.

**D.**

Colvard argues in her reply that the claims against her in her official capacity "would be barred by qualified immunity" as it "shields Government officials."  [ECF No. 16, PageID.73].  "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citation and quotation marks omitted).

Colvard made her qualified immunity argument too late.  "It is well-settled that a movant cannot raise new issues for the first time in a reply brief."  *Malin v. JPMorgan*, 860 F. Supp. 2d 574, 577 (E.D. Tenn. 2012).  The reason for this rule is that consideration of new issues raised for the first time in a reply brief "deprives the non-moving party of its opportunity to address the new arguments."  *Hickman v. Sloan Fluid Accessories, Inc.*, 833 F. Supp. 2d 822, 828 (E.D. Tenn. 2011) (citation and quotation marks omitted).

And Colvard's qualified immunity argument is off the mark.  In asserting qualify immunity, she relies on an argument that there has been no showing that she "acted under the color of state law or deprived [Rhodes] of any constitutional right."  [ECF No. 16, PageID.73].  But § 11(b)

13

applies to private actors, and it is a clearly established statutory right. *Wohl*, 2020 WL 6305325 at *12.  Colvard's attempt to raise qualified immunity should be rejected.

### E.

The Court ends with a warning to Rhodes.  As a *pro se* plaintiff, Rhodes must sign all papers filed in this Court and discovery documents to certify that, to the best of his knowledge, they are not interposed "for any improper purpose," including to harass a party.  Fed. R. Civ. P. 11(b)(1) & 26(g)(1)(B)(ii).  If Rhodes violates these rules, the Court may impose monetary and other sanctions against him.  Rules 11(c) & 26(g)(3).

Rhodes's response to Colvard's motion to dismiss has prompted this warning.  Rhodes started the response by saying, "Since Defendant Kenson Siver felt the need to disrespect Plaintiff in response to this complaint, Plaintiff responds in kind."  [ECF No. 17, PageID.90].  Then, Rhodes filed his brief with irrelevant and repugnant statements about Siver and "white male homosexual[s]."  [ECF No. 17].  For example, he alleges that homosexuality is a "depraved behavior found with whites and white society."  [ECF No. 17*,* PageID.96].  And in what would be news to James Baldwin, Alice Walker, RuPaul, and other icons, Rhodes alleges, "The homosexual is alien to the black community."  [*Id.*].

14

The Court disagrees with Rhodes's conclusion that Mayor Siver's answer was intended to show disrespect to Rhodes.  In his answer, Siver denies that Rhodes was at the Kennedy Learning Center to vote; he says that Rhodes instead was there to illegally remove the signs of white candidates.  [ECF No. 12].  Mayor Siver also says that he called the police because of Rhodes's assaultive behavior.  [*Id.*].  These allegations are germane to the dispute at the heart of Rhodes's complaint.  Siver's use of the term "bizarre" to describe Rhodes's conduct may have been unnecessary, but Siver used that term in connection with giving his account of what caused the conflict described in Rhodes's complaint.  In contrast, Rhodes's responsive brief described events and made accusations that had no connection to the November 2017 incident at issue.

When addressing Colvard's motion to dismiss, the Court may not assess Rhodes's credibility.  *Hanas v. Seterus, Inc.*, 92 F. Supp. 3d 747, 750 (E.D. Tenn. 2015) ("The court may not grant such a motion to dismiss based upon a disbelief of a complaint's factual allegations.").  But Rhodes should know that his irrelevant, outlandish, and repugnant screeds about Siver and homosexuals do not enhance his credibility.

And if he files more briefs or exchanges any discovery materials with immaterial allegations intended only to malign a defendant, he will face

15

sanctions under Rules 11(c) & 26(g)(3).

## IV.   CONCLUSION

The Court recommends that Colvard's motion to dismiss or for a

more definite statement **[ECF No. 14]** be **GRANTED IN PART AND**

**DENIED IN PART**, and that all claims against defendants but those

alleging voter intimidation be dismissed.

s/Elizabeth A. Stafford
ELIZABETH A. STAFFORD
United States Magistrate Judge

Dated: February 1, 2021

## NOTICE TO THE PARTIES ABOUT OBJECTIONS

Within 14 days of being served with this report and recommendation, any party may serve and file specific written objections to this Court's findings and recommendations. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). If a party fails to timely file specific objections, any further appeal is waived. *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991). And only the specific objections to this report and recommendation are preserved for appeal; all other objections are waived. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this report and recommendation to which it pertains. Within 14 days after service of objections, **any non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc. The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation. If the Court determines that any objections are without merit, it may rule without awaiting the response.

17

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on February 1, 2021.

<u>s/Marlena Williams</u>
MARLENA WILLIAMS
Case Manager

18